UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Tetra Tech Ec, Inc.,

        Plaintiff,

vs.                                   Case No.  3:10-cv-465-J-32MCR

White Holly Expeditions LLC , et al.,

        Defendant and Garnishee.

_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion to Vacate Writ of

Garnishment and Attachment (Doc. 11) filed June 18, 2010.

## I.   BACKGROUND

On October 9, 2009, Plaintiff, Tetra Tech Ec, Inc., and Defendant, White Holly

Expeditions, LLC, entered a charter party (the "Charter"), with respect to the vessel R/V

White Holly (the "vessel"), wherein Plaintiff agreed to hire the vessel commencing on

November 20, 2009, and terminating on April 20, 2010.  (Doc. 11-A).  The Charter was

part of a purchase order between Plaintiff and Defendant.  (Doc. 11-B).  Plaintiff's

principal scientist and hydrographer, Robert Feldpausch, negotiated the Charter with

Defendant's sole member and Chief Executive Officer ("CEO"), Captain Vincent

Backen.  (Doc. 11, p. 2).

The Charter negotiations included the deletion of the following sentence from

section 23 of the Charter:

> Owner shall not have [a] lien upon Charterer's RESON SeaBat
> 7125 sonar or Applanix POS MV 320/Wavemaster nor any
> equipment provided by Charterer in association with multibeam
> survey operations or data processing.

(Doc. 11-D).  The parties made several modifications to the Charter and on April 14,

2010, the parties executed a fourth modification which extended the period of

performance.  (Doc. 11-E).  In terms of payment, section 11 provides:

> Payment of Hire for Charterers underway - surveying beyond
> 90 days will be invoiced by the Owners at the completion of the
> project and be paid by the Charters on a NET 15 [days basis].

(Id.).  Throughout the month of May 2010, Defendant submitted multiple invoices to

Plaintiff, totaling $178,472.00.  (Doc. 11-F).  On May 25, 2010, the vessel returned to

Jacksonville, Florida and the Charter was complete.  (Doc. 11, p. 4; Doc. 17, p. 4).

On May 25, 2010, Plaintiff unloaded its equipment from the vessel, which

included a GAPS 3D acoustic array and inertial navigation system (the "GAPS 3D").[1]

(Doc. 19, ¶¶ 6, 15).  This particular piece of equipment was placed in a locked case and

stored in a tow trailer for the night.  (Id.).  The following day, under the belief that

Plaintiff still owed it $178,472.00, Captain Backen returned the GAPS 3D to the vessel

to be held until payment was received.  (Doc. 11, p. 4; Doc. 11-C, ¶ 13).  That same

day, Plaintiff sent Defendant a letter requesting it return the GAPS 3D.  (Doc. 11-G).  On

May 27, 2010, Plaintiff's counsel sent another letter threatening action if the GAPS 3D

was not returned.  (Doc. 11-H).

---

[1]"This is a somewhat unique devise.  None were available for rent in the USA, or the world,
in May/June 2010."  (Doc. 21, ¶ 28).  A replacement would be priced at $211,060.00, with a waiting
period a minimum of twelve weeks.  (Id. at ¶ 27).

On May 28, 2010, Plaintiff filed a verified complaint against Defendant alleging breach of contract, conversion, and civil theft.  (Doc. 1).  Additionally, Plaintiff filed an Emergency Motion to Issue a Writ of Maritime Garnishment and Attachment as to the Master of the R/V White Holly.  (Doc. 2).  This Court granted Plaintiff's Motion.  (Doc. 3).  On May 29, 2010, after confirming the first four payments had been received, Defendant made the GAPS 3D available for transfer to Plaintiff.  (Doc. 11-I).  Given the memorial day weekend and the need for inspection, the transfer could not be arranged until June 2, 2010.  (Doc. 20, ¶ 33).  On June 2, 2010, the parties conducted a test of the GAPS 3D and found it to be in good condition and operational.  Therefore, Plaintiff accepted the return.  (Doc. 17, p. 7).

On June 18, 2010, Defendant filed the instant Motion to Vacate Writ of Garnishment and Attachment pursuant to Rule E(4)(f), Federal Supplemental Rules of Admiralty or Maritime Claims, Local Rule 3.01, Rules of the United States District Court for the Middle District of Florida, and Local Admiralty Rule 7.02(e).  (Doc. 11).  On July 1, 2010, Plaintiff filed its response in opposition to the Defendant's Motion.  (Doc. 17).  Pursuant to Supplemental Rule E(4)(f), and upon the request of the parties (Doc. 25), a post attachment hearing was held before the undersigned on July 29, 2010.  (Doc. 26).  Accordingly, this matter is now ripe for judicial review.

## II.   ANALYSIS

Defendant contends the Writ of Garnishment and Attachment should be vacated because Plaintiff improperly invoked Supplemental Rule B, Federal Supplemental Rules

of Admiralty or Maritime Claims ("Supplemental Rule B"), by failing to satisfy the

requirements of the Rule.  Supplemental Rule B provides, in relevant part:

> In an *in personam* action:
>
> (a)  If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property--up to the amount sued for--in the hands of garnishees named in the process.
>
> (b)  The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.
>
> (c)  If the plaintiff or the plaintiff's attorney certifies that exigent circumstances make court review impracticable, the clerk must issue the summons and process of attachment and garnishment. The plaintiff has the burden in any post-attachment hearing under Rule E(4)(f) to show that exigent circumstances existed.

The Supplemental Rule B process of attachment has two stated purposes: (1) to

secure a respondent's appearance; and (2) to assure satisfaction in case the suit is

successful.  Swift & Co. Packers v. Compania Colombiana Del Caribe, S. A., 339 U.S.

684 (U.S. 1950).  To survive the motion to vacate, plaintiff has the burden to show the

following: (1) that they have a valid prima facie admiralty claim against the defendant;

(2) that the defendant cannot be found within the district; (3) that the defendant's

property may be found in the district; and (4) that there is no statutory or maritime bar to

attachment.  Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2nd

Cir. 2006).

Here, the following factors are at issue: (a) whether Plaintiff established a *prima*

*facie* admiralty claim against Defendant  (Doc. 11, pp. 6-12); and (b) whether Defendant

can be found within the district  (Id. at pp. 12-16).  The Court will address each of these

factors.

**A.**    **Whether Plaintiff established a *prima facie* admiralty claim against Defendant.**

Plaintiff alleges claims for breach of contract, conversion, and civil theft.  (Doc.

1).  The Court will address each of these claims.

**1.**    **Whether Plaintiff established a *prima facie* claim for breach of contract.**

A charter party is a contract between the owner of a vessel and a charterer and

is subject to the general rules of contract law.  Marine Overseas Services, Inc. v.

Crossocean Shipping Co., 791 F.2d 1227 (5th Cir. 1986).  A charter is formed once the

traditional contact elements are present, such as consideration, offer, and acceptance.

Id.  When a contract is maritime in nature and the dispute of over such contract is not

inherently local, federal law will control.  Norfolk Southern Ry. v. James N. Kirby, Pty

Ltd., 543 U.S. 14 (U.S. 2004).  However, to the extent that it is not inconsistent with

admiralty principles, state contract law may be applied to maritime contracts.  Northern

Ins. Co. v. Pelican Point Harbor, Inc., 2006 U.S. Dist. LEXIS 30380, 2006 WL 1285078,

at *4 (N.D. Fla. 2006).  The elements of a breach of contract claim are: (1) a valid

contract; (2) a material breach; and (3) damages.  F.W.F. Inc. v. Detroit Diesel Corp., 494 F. Supp. 2d 1342 (S.D. Fla. 2007).

Here, the parties agree that there was a contract in the form of a Charter.  See (Doc. 11, p. 2; Doc. 17, p. 3).  However, according to Defendant, there were several agreements between the parties, including the Charter and "related agreements."  (Doc. 11, pp. 4, 8, 9, 11).  The Court is not interested in these "related agreements" and will only look to the language of the Charter itself when addressing Plaintiff's claims.  See Battery S.S. Corp. v. Refineria Panama, S. A., 513 F.2d 735, 738 (2d Cir. 1975) ("When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.").

Defendant argues Plaintiff failed to establish a *prima facie* case of breach of contact because the Charter provided Defendant with a lien on Plaintiff's equipment in the event of Plaintiff's non-payment.  In support of this contention, Defendant states that the Charter negotiations included the deletion of Section "23. Liens", which read:

> Owner shall not have [a] lien upon Charterer's RESON SeaBat 7125 multibeam sonar or Applanix POS MV 320/Waverunner nor any equipment provided by Charterer in association with multibeam survey operations or data processing.[2]

By deleting this language, Defendant argues, a valid claim of lien was established.  The Court is reluctant to agree that the deletion of this particular sentence equates to a

---

[2]The Court notes that the GAPS 3D is not named here.

conclusion that Defendant has a lien on any and all of Plaintiff's equipment in the event of non-payment.

However, in any event, even assuming Defendant possessed a valid lien on the GAPS 3D,[3] the alleged claim of lien had not yet matured.  Under the terms of the Charter, payment of acceptable invoices beyond the original 90 day charter period were to be paid "Net 15 days" from receipt.  (Doc. 18-1).  Specifically, section 11 provides:

> Payment of Hire for Charterers underway - surveying beyond 90 days will be invoiced by the Owners at the completion of the project and be paid by the Charters on a NET 15 [days basis].

The invoices in question are dated as follows: May 4, 2010, May 19, 2010, and May 25, 2010.  The only invoice that had come due on May 26, 2010, the date the GAPS 3D was possessed by Defendant, was the May 4, 2010 invoice.  However, payment on this particular invoice had already been received.  See (Doc. 18-3).  Therefore, on May 25, 2010, there were no past due invoices and Defendant's alleged claim of lien had not yet matured.[4]

Additionally, even assuming Defendant's right of lien was established at the time the GAPS 3D was taken, that right may have been extinguished when the equipment was taken off the vessel by Plaintiff the day before.  A lien may be exercised only if the cargo has not been unconditionally released.  Beverly Hills Nat'l Bank & Trust Co. v.

---

[3]This Court is not offering any conclusions regarding whether or not the deletion of section "23. Lien" established a lien in favor of Defendant.  Rather, the Court is assuming, for the sake of argument, that a lien right was established.

[4]The Court notes Defendant's argument that Plaintiff did not assure Defendant that it would pay the remainder of the invoices in a timely manner.  (Doc. 11, p. 3).  However, nothing in the Charter directs that Plaintiff must give assurances of payment.  Therefore, this Court will not impose such a requirement.

Compania de Navegacione Almirante S.A., 437 F.2d 301, 304 (9th Cir. 1971).  Here, on

May 25, 2010, Plaintiff unloaded the GAPS 3D, placed it in a locked case and stored it

in a tow trailer for the night.  (Doc. 22, ¶ ¶ 6, 15).  It was not until the next day that

Captain Backen returned the equipment to the vessel to hold until payment was

received.  (Doc. 11, p. 4; Doc. 11-C, ¶ 13).

In sum, even when assuming Defendant possessed a valid lien on the GAPS 3D,

it appears the claim of lien had not yet matured.  Further, even if the claim of lien had

matured at the time the GAPS 3D was taken off the vessel, the GAPS 3D was arguably

released to Plaintiff; thereby possibly extinguishing any claim of lien which may have

existed.  Therefore, the Court finds Plaintiff has established a *prima facie* case for

breach of contract.[5]

> ## 2.    Whether Plaintiff established a *prima facie* claim for conversion.

With respect to a cause of action in tort, maritime law incorporates the general

law of torts when it is not inconsistent with the principles of admiralty law.  Northern Ins.

Co., 2006 U.S. Dist. LEXIS 30380, 2006 WL 1285078, at *4.  Here, maritime and

Florida causes of action for conversion are virtually identical.

> "[C]onversion is an unauthorized act which deprives another of
> his property permanently or for an indefinite time."  Nat'l Union
> Fire Ins. Co. of Pa. v. Carib. Aviation, Inc., 759 F.2d 873, 878
> (11th Cir. 1985) (quoting Senfeld v. Bank of N.S. Trust Co.,
> 450 So. 2d 1157, 1160-61 (Fla. 3d DCA 1984)).  "[T]he
> essence of conversion is not the possession of property by the
> wrongdoer, but rather such possession in conjunction with a

---

[5]This Court is *not* ruling on whether there was, in fact, a breach of contract.  Rather, the
Court is ruling that Plaintiff has made a *prima facie* showing.

> present intent on the party of the wrongdoer to deprive the person entitled to possession of the property." <u>Senfeld</u>, 450 So. 2d at 1161.  Such intent may be shown by, inter alia, the plaintiff's demand for return of the property and the defendant's refusal to return it.  <u>Id.</u>  In addition, the claimant must establish "possession or an immediate right to possession of the converted property at the time of conversion." <u>United States v. Bailey</u>, 419 F.3d 1208, 1212 (11th Cir. 2005).    Thus, conversion is established by proof of: (1) the plaintiff's immediate right to possession of property when taken; and (2) the defendant's refusal to return property upon demand.

<u>Cent. Fla. Council v. Rasmussen</u>, 2010 U.S. Dist. LEXIS 39947, 2010 WL 1258070

(M.D. Fla. Mar. 28, 2010)**.**

Here, Plaintiff has adequately established that its immediate right to possession

of the property was taken when Defendant placed the GAPS 3D upon the vessel and

refused to return it.  <u>See</u> <u>Marine Transp. Servs. Sea-Barge Group v. Python High</u>

<u>Performance Marine Corp.</u>, 16 F.3d 1133, 1140 (11th Cir. 1994).  Plaintiff then

demanded the return of its property, which was initially refused.  (Docs. 11-G, 11-H).

Therefore, the Court finds Plaintiff has established a *prima facie* case of conversion.[6]

### 3.    Whether Plaintiff established a *prima facie* claim for civil theft.

Section 772.11, Florida Statutes, provides a civil remedy for theft by "[a]ny

person who proves by clear and convincing evidence that he or she has been injured in

any fashion by reason of any violation of provisions of ss. 812.012-812.037 ..."  Fla.

Stat. § 722.11.  Section 812.014, Florida Statutes, provides, in relevant part:

---

[6]This Court is *not* ruling on whether a conversion was, in fact, committed.  Rather, the Court is ruling that Plaintiff has made a *prima facie* showing.

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
>> (a) Deprive the other person of a right to the property or a benefit from the property.
>>
>> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014.

Here, as analyzed above, Plaintiff had a right to possession of the GAPS 3D and Defendant deprived Plaintiff of its right, albeit shortly.  Therefore, the Court finds Plaintiff has adequately established a *prima facie* case of civil theft.[7]

**B.      Whether Defendant is found in this district.**

Supplemental Rule B(1) states:

> With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees. . . *if the defendant shall not be found within the district.*

(emphasis supplied).  In LaBanca v. Ostermunchner, the Court established a two-prong test for determining whether a defendant can be found "within the district" for purposes of Supplemental Rule B(1).  664 F.2d 65, 67 (5th Cir. 1981).  First, the Court must determine whether the defendant is present for personal jurisdiction purposes; in other words has the defendant engaged in sufficient activity or "minimum contacts" to warrant

---

[7]This Court is *not* ruling on whether civil theft was, in fact, committed.  Rather, the Court is ruling that Plaintiff has made a *prima facie* showing.

the exercise of personal jurisdiction.  It is only if the answer to the first question of

"minimum contacts" is in the affirmative, that inquiry proceeds to the second level of

whether defendant can be served in the district.

### 1. Whether Defendant was present in this district for personal jurisdiction purposes.

As abovementioned, the first step of the Labanca test is to determine whether the

exercise of personal jurisdiction over the defendant is warranted, by analyzing whether

such defendant has engaged in sufficient activity or "minimum contacts."  20th Century

Fox Film Corp. v. M.V. Ship Agencies, 992 F. Supp. 1423, 1426 (M.D. Fla. 1997).  In

other words, to be "found" within the district, a defendant must not only be found for the

purpose of service of process, but must also be "engaged in sufficient activity in the

district to subject it to jurisdiction even in the absence of a resident agent expressly

authorized to accept process."  ProShipLine, Inc. v. Aspen Infrastructures, Ltd., 585

F.3d 105, 111-12 (2d Cir. 2009).  The time for determining whether a defendant is found

in the district is at the time of the plaintiff's filing of the complaint that prays for

attachment.  Id. at 112.

Here, the Charter at issue specifies Jacksonville, Florida as the port at which the

vessel would be delivered back to Defendant.  The Charter involved over a million

dollars of commercial activity which was to be finalized upon the vessel's return to

Jacksonville.  The Charter lasted several months and the vessel still remains in this

district.  Defendant asserts that it fully intends to continue to conduct substantial

commercial activity utilizing the ports in the Middle District of Florida.  (Doc. 11, p. 14;

Doc. 11-C, ¶ 3).  Indeed, Defendant represents that at the time Plaintiff filed its

complaint, White Holly was under contract for a project to take place in the Middle District of Florida.  (Id.).

Based on the foregoing, the Court finds Defendant could be "found" in this district at the time Plaintiff filed its complaint, as it had "recently conducted substantial commercial activity in this district and probably will do so in the future."  See 20th Century Fox Film Corp. v. M.V. Ship Agencies, 992 F. Supp. 1423, 1425 (M.D. Fla. 1997) (citing Oregon Lumber Export Co., v. Tohto Shipping Co., 53 F.R.D. 351, 352 (W.D. Wash. 1970)).

### 2.    Whether Defendant was present in this district for service of process purposes.

As abovementioned, if the answer to the first question of "minimum contacts" is in the affirmative, the Court's inquiry proceeds to the second prong of the Labanca test, whether the defendant can be served within the district as provided by the Federal Rules of Civil Procedure.  20th Century Fox Film Corp., 992 F. Supp. at 1426.

Here, Defendant is a limited liability company whose sole member and CEO is Captain Backen.  Rule 4(h), Federal Rules of Civil Procedure, control service of process on corporations, partnerships, and unincorporated associations and applies to service on a limited liability company.  See Pallman Maschinenfabrik GmbH & Co. v. Evergreen Composite Tech., L.L.C., 2009 U.S. Dist. LEXIS 3100, 2009 WL 112683 (M.D. Ga. Jan. 16, 2009).  Although Rule 4(h)(1)(A) provides that service may be perfected in the manner prescribed by Rule 4(e)(1) for serving an individual, "complying with the forum state's law government service is not the only way in which a plaintiff can prefect service on a limited liability corporation."  Id.  Instead, Rule 4(h)(1)(B) allows for service:

> by delivering a copy of the summons and of the complaint to an
> officer, a managing or general agent, or any other agent
> authorized by appointment or by law to receive service of
> process and--if the agent is one authorized by statute and the
> statute so requires--by also mailing a copy of each to the
> defendant[.]

Fed. R. Civ. P. 4(h)(1)(B).

Captain Backen was present in the Middle District of Florida at the time Plaintiff filed its verified complaint and, therefore, could have been served as provided by Federal Rule of Civil Procedure 4(h)(1)(B).  Accordingly, the Court finds Defendant was "found within the district" because it could be served within the district as provided by the Federal Rules of Civil Procedure.

## III.  CONCLUSION

In sum, although Plaintiff has established *prima facie* claims for breach of contract, conversion, and civil theft, Defendant can be found "within the district" for purposes of Supplemental Rule B(1).  Therefore, the requirements of Supplemental Rule B have not been satisfied.

According, after due consideration, it is

**ORDERED:**

Defendant's Motion to Vacate Writ of Garnishment and Attachment (Doc. 11) is **GRANTED.**  The Writ of Garnishment and Attachment issued as to the Master of the R/V White Holly is hereby **VACATED.**

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  16th  day of

August, 2010.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Any Unrepresented Party